## MOODY v. DICKINSON.

1. APPEAL—PRACTICE—JURISDICTION—PLEADINGS—AMENDMENTS.—If a Circuit Judge have no jurisdiction to order the amendment of a notice of appeal, the proper practice is to disregard the order and move this Court to dismiss the appeal, because no notice had been served.

2. IBID.—"CASE"—PRACTICE.—Before this Court will dismiss an appeal because notice was not served in time, that fact must appear affirmatively in the "Case."

3. IBID.—PRACTICE—PLEADINGS—AMENDMENTS.—There is no error in Circuit Judge in permitting appellant on motion to amend notice of appeal by correcting mere clerical error, by which no one was mislead, prejudiced or delayed.

4. PLEADINGS.—ANSWER—REMEDIES.—A DEFENSE setting up a breach of covenant by defendant's grantee, and fraud and collusion with others in obtaining the foreclosure of a mortgage, cannot be set up against purchaser's title at such foreclosure sale, to which neither were parties.

Before WATTS, J., Barnwell, April, 1898. Affirmed.

Action for possession of land by heirs at law of M. A. Moody against F. H. Dickinson. From order sustaining demurrer to second defense, defendant appeals, and from order permitting defendant to amend his notice of appeal, plaintiffs appeal. The following is the defense ruled out:

I. The defendant alleges that on the 11th day of December, 1891, he executed and delivered to Henry J. Moody, the husband of plaintiff, a conveyance of the said described tract of land, and at the same time the defendant and the said Henry J. Moody entered into a solemn covenant wherein the said Moody assumed and undertook to perform certain trusts and obligations therein minutely and particu-

larly set forth, for their mutual benefit and advantage, and that said conveyance was intended solely to enable the said Moody to execute the trusts and obligations he had assumed, and was wholly without other consideration whatsoever, a copy of which covenant is hereto attached and made part of this answer. II. The said Moody, disregarding the terms of his solemn covenant, and intending to mislead, deceive and defraud this defendant, procured an action to be brought in this Court, in which a large number of persons were made parties, this defendant being made a party defendant in said action, and on the petition of the Union Mortgage Banking and Trust Company of Londan, another defendant therein, the said action was removed from this Court into the United States Circuit Court, and by the contrivance of said Moody, and with his consent and the consent of other parties to said action in collusion with him, a decree of said Court was obtained, whereby the lands of this defendant embraced in said conveyance, were to be sold from time to time, until the said lands conveyed to said Moody were sold and disposed of. III. That pending the action in said United States Court, and before said decree, an order was made by said Court, dismissing the plaintiff's bill as to this defendant, and in the said action none of the rights of this defendant, legal or equitable, were either considered or adjudicated. IV. That at the sales from time to time of defendant's lands, under the decree of said United States Court in said action, this defendant gave notice that he was the owner, and in the possession of said lands, and the said Henry J. Moody, the husband and agent of the plaintiff herein, was present when the said described tract of land was sold, and purchased the same in the name of the said plaintiff; and subsequent to said sale, on a rule to obtain possession of said premises, the said United States Court refused to require this defendant to surrender the possession of said premises to said plaintiff (all of which facts herein set forth and alleged being well known to plaintiff by and through her husband and agent; a copy of the order of

said Court attached hereto, and made a part of this answer).
V. That said Henry J. Moody has not only failed and
refused to fulfil and perform his solemn trusts and obliga-
tions, set forth in said covenant, but has deceitfully and
fraudulently used said covenant and his trusts, as instru-
ments of injury and damage to this defendant, subjecting
this defendant to onerous litigation and expense, and defeat-
ing the scheme of said covenant. Wherefore, defendant
demands that the complaint herein be dismissed with costs.

The following is the covenant: South Carolina, Barnwell
County. Whereas, we, Henry J. Moody and Frank H.
Dickinson, both of the county aforesaid, are owners in fee
of the two parcels of land laid off and set apart for the
building of the town of Seigling, on the Carolina Midland
Railroad, the said H. J. Moody being the owner of all the
land lying north of the Orangeburg road, and the said
Frank H. Dickinson being owner of all the land south of said
road, to be included in, become part of said town, making
together      acres; and whereas, the said Frank H.
Dickinson, in consequence of ill health and other causes, is
unable to give such attention to the sale of lots in said pro-
posed town or to adjacent lands as is desired and neces-
sary for the progress and advancement of said town; and
whereas, there are now two mortgages covering the entire
tract of land owned by said Frank H. Dickinson, one to the
Union Mortgage Banking and Trust Company for $3,500,
dated May 24th, 1889, and recorded in clerk's office in book
5 T, page 284, and the other to W. H. Wroten, agent, for
$538, recorded in book 5 R, page 402; the interest in the
former mortgage, payable annually, being now due, and
both principal and interest in the second mortgage being
now due; and whereas, the said Frank H. Dickinson, by his
deed the 11th day of December, A. D. 1891, did convey to
me, the said H. J. Moody, in fee simple, the said tract of
land, consisting of 412 acres, more or less, and being the same
land covered by said mortgages, and parties who are anx-

ious to purchase lots in said proposed town have refused to do so, in consequence of said incumbrances, but are willing to purchase and invest, if warranty of their titles are given by me, the said H. J. Moody. Now, therefore, I, Henry J. Moody, in consideration of the premises, and in consideration also of the sum of $5 to me in hand paid by the said Frank H. Dickinson, do hereby covenant and agree to and with the said Frank H. Dickinson, to sell and convey and make warranty in my own name to all persons purchasing lot or lots from me, or any part of said lands conveyed to me by the said Frank H. Dickinson, in such manner and at such price and on such terms as shall be to the greatest benefit and advantage to the parties hereto, and to the interest and advancement of the proposed town; and when sales of any portion of said lands are made, that the proceeds thereof shall be applied to the payment of the interest and principal of the mortgages hereinbefore described; that the said H. J. Moody shall take receipts for all amounts paid out and vouchers, which shall disclose his actings and doings in the premises, and on demand of the said F. H. Dickinson shall exhibit the same; and when said mortgages are paid, or when by mutual consent this agreement shall be revoked and discontinued, I, the said Henry J. Moody, for myself, my heirs, executors and administrators, agree to convey to the said Frank H. Dickinson, his heirs and assigns, the lands remaining unsold or unbargained for, in fee and absolute; and I, the said Frank H. Dickinson, for myself, my heirs, executors and administrators, agree that should the said Henry J. Moody have, during the existence of this covenant, paid out, either by way of interest or principal on said mortgages, any sum of money, or bound himself to so pay out any sum in excess of the proceeds of the sale of any of the lots or lands included in my deed to him, that whenever this agreement or covenant shall be revoked or discontinued, the said lands so conveyed by me, F. H. Dickinson, to the said Henry J. Moody, shall stand as security for the excess so paid out, and the said Henry J. Moody shall hold

34—54

the title to said lands until all legal and proper demands by
him shall be fully satisfied and discharged.   In witness
.whereof, we, the said Frank H.  Dickinson and the said
Henry J. Moody, have affixed our hands and seals, this 11th
day of December, A. D. 1891.   H. J. Moody. (L. S.)  F. H.
Dickinson. (L. S.)   Signed, sealed and delivered in pres-
ence of  Witness : H. E. Dickinson, J. P. Moody.

*Messrs. Patterson & Holman* and *J. L. Tobin,* for plain-
tiffs.   The former cite : *As to plaintiffs' appeal:* Code, 345.

*Messrs. J. J. Brown* and *Robert Aldrich,* for defendant.
The former cites : *As to plaintiffs' appeal:* 53 S. C., 313, and
cases therein cited.

March 28, 1899.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE MCIVER.   This action was com-
menced on the 19th of May, 1897, by one M. A. Moody
against the defendant, to recover possession of certain real
estate alleged to be in the possession of the defendant.   The
.complaint was in the usual form, and the defendant
answered, setting up two defenses : 1st.  A general denial of
all the allegations contained in the complaint, except "that
the defendant is in possession of  said described tract of
land."  2d.  A special defense, which will  hereinafter be
more particularly referred to.   The original plaintiff, M.
A. Moody, having departed this life intestate, on the
day of September, 1897, leaving as her heirs at law, her
husband, H. J. Moody, and the following named children,
to wit : J. P. Moody and L. M. Cave (*nee* Moody), the
present plaintiffs applied for and obtained, on the
day of November, 1897, from his Honor, Judge Ernest
Gary, an order substituting the persons named in the title
of this opinion as parties plaintiffs, in lieu of the original
plaintiff, M. A. Moody, deceased, and authorizing them to
prosecute said action in the same manner and to the same

extent as the said M. A. Moody could have done were she still living. The case came on to be heard before his Honor, Judge R. C. Watts, and a jury, at March term, 1898. When the pleadings were read, plaintiffs demurred to the second defense set up in the answer, upon the ground that the facts stated therein were not sufficient to constitute a defense. The Circuit Judge sustained the demurrer, and the case went to the jury upon the issues raised by the first defense, who found a verdict in favor of the plaintiffs, upon which judgment was duly entered. From the order over-ruling the demurrer and from said judgment, defendant gave notice of his intention to appeal, which, it is conceded, was given in due time. But in framing his notice of his intention to appeal, defendant's counsel through inadvertence, entitled the notice as follows: "H. J. Moody, as administrator, plaintiff, against F. H. Dickinson, defendant," instead of H. J. Moody and others *v.* F. H. Dickinson, as it should have been; but it does not appear that the notice of his intention to appeal was returned by plaintiffs' counsel for this or any other reason. But defendant's counsel, having soon afterwards discovered the mistake in the title of his notice of appeal, gave notice to plaintiffs' counsel that he would move before his Honor, Judge Watts, "to amend the notice of appeal by striking out the word 'administrator,' and adding the names of J. P. Moody and L. M. Cave to the name of H. J. Moody, plaintiff." The Circuit Judge, after hearing argument of counsel representing the respective parties, granted an order, in which, amongst other things, he says: "I am satisfied that the notice of appeal was served in due time and in good faith * * * that the notice of appeal was amply sufficient to apprise plaintiffs of the case to which it had reference; that there was no such case on the calendar as H. J. Moody *et al.,* plaintiff, against F. H. Dickinson, defendant, and that the error of inserting the name of H. J. Moody, administrator, instead of H. J. Moody *et al.,* in the notice of appeal, was excusable inadvertence arising from confusion of different cases on the calendar,

and the defective notice of appeal, with objections stated, should have been returned at once to the party serving it, which was not done. That the plaintiffs have not been misled or surprised, nor will they be delayed by allowing the proposed amendment." He, therefore, ordered amongst other things, that the amendment asked for be allowed; that the amended notice of appeal be served on the plaintiffs' attorneys within ten days from this date, and that defendant's attorneys be allowed to prepare and serve their case and exceptions within thirty days from the date of this order, which bears date 21st April, 1898. From this order plaintiffs' attorneys gave notice of their intention to appeal, which notice bears date 2d of May, 1898, and afterwards served their exceptions, which bear date 10th May, 1898. In the meantime, however, defendant, in accordance with the leave granted by Judge Watts, gave another notice of appeal from the ruling of the Circuit Judge sustaining the demurrer and from the judgment entered on the verdict, which is properly entitled, which bears date 26th of April, 1898. There are, therefore, two appeals before us in this case. 1st. The plaintiffs' appeal from the order of the Circuit Judge, allowing the defendant to amend his notice of intention to appeal by correcting an inadvertent clerical error in the title of such notice. 2d. The appeal of the defendant, which substantially affects the merits of the case.

We will first consider the plaintiffs' appeal, because that seems to be the most natural order. If, as is contended for in plaintiffs' exceptions to the order of the Circuit Judge, he had no jurisdiction to hear or consider the same, then such order could have been disregarded with impunity, and the plaintiffs' remedy would have been by a motion, in this Court, to dismiss the appeal, upon the ground that no notice of intention to appeal was given within the time prescribed by law; but there is nothing in the "Case" showing that any notice of any such motion was given. If, however, such a motion had been made before this Court, it could not have been granted, under the facts

as set forth in the "Case." It there appears that a notice of intention to appeal, properly entitled, bearing date the 26th of April, 1898, was given, and there is nothing in the "Case" which shows that the time for giving such notice had then expired, for there is nothing to show when the Court rose, and for aught that appears, such notice may have been given within the prescribed time, for the law allows ten days *after the rising of the Court* within which the notice of intention to appeal may be given in a case tried by a jury, as this was: and a motion to dismiss an appeal upon such grounds cannot be granted unless it appears, affirmatively, that the time allowed had expired before this notice was given. It is true, that it is stated in one of plaintiffs' exceptions that no notice of appeal was given within the time allowed, and the same statement is made in the argument of plaintiffs' counsel; but this Court has so often held that no fact which appears only in the exceptions or in the argument of counsel can be considered, that we need not say more upon the subject. It may be said that this view rests upon a mere technicality, but it must be remembered that the appeal of plaintiffs also rests upon technical grounds; and, as is said in *Ware* v. *Miller,* 9 S. C., at page 16, "parties who assail others upon purely technical grounds should be careful to see that their mode of attack is itself technically accurate." Of course, we are not to be understood as saying that the question of jurisdiction presented by plaintiffs' exceptions is technical. But what we do mean to say is, that the ground upon which plaintiffs attack defendant's appeal, is purely technical. There can be no doubt that plaintiffs did have notice of defendant's intention to appeal, within due time, and the effort to take advantage of a mere clerical error in the title of the notice first given, by which they were in no way prejudiced or misled, seems clearly technical. Under this view, plaintiffs' appeal cannot be sustained, without regard to the question whether there was error in the order granting leave to defendant to amend a mere clerical error, in the

notice of intention to appeal first served. But as that question has been made, we may say that we are not prepared to hold that there was any error in allowing the defendant to correct a mere clerical error in the title of his notice of intention to appeal, whereby it is not even claimed that plaintiffs were misled or in any way prejudiced, and were not delayed; for the "Case" was prepared for hearing and was actually heard by this Court at the first term at which it could have been heard in any event.

We will next consider the appeal on the part of the defendant, which substantially raises the single question whether there was error in sustaining the demurrer to the second defense set up in the answer. For a full understanding of this question, the Reporter should set out in his report of this case a copy of the second defense, including the covenant, which is made a part of the answer. It is sufficient to state here, in general terms, that, as we understand it, defendant's second defense is based upon certain transactions between the defendant and H. J. Moody, the husband of the original plaintiff, M. A. Moody, in which it is not alleged that she was in any way implicated. These transactions may be substantially stated as follows: On the 11th day of December, 1891, the defendant, being then the legal owner of the land now in dispute, conveyed the same to the said H. J. Moody, subject, however, to the lien of two antecedent mortgages, one in favor of the Union Mortgage Banking and Trust Company to secure the payment of $3,500, and the other in favor of W. H. Wroten to secure the payment of $538. On the same day, 11th of December, 1891, the said parties, H. J. Moody and the defendant, entered into the covenant above referred to, whereby Moody undertook to sell said land, apply the proceeds to the payment of said mortgages, and account to defendant for any surplus of the proceeds of such sale. Subsequently, but at what time is not stated, an action was brought in the Court of Common Pleas for Barnwell County, in this State, to which a large number of

persons were made parties, including the Union Mortgage
Company above referred to, and the same was, on the peti-
tion of said company, removed into the United States
Circuit Court, where a decree was made directing a sale of
said lands. Under that decree the land here in dispute was
sold by the special master appointed for that purpose, and
bid off by the original plaintiff in this case, M. A. Moody,
who received titles for the same. There are allegations of
fraud and collusion against H. J. Moody in procuring the
said action to be brought, and in obtaining the order of the
sale in the United States Court, which need not be particu-
larly stated, as it is not alleged that the original plaintiff, M.
A. Moody, was in any way implicated in such fraud or col-
lusion. An order of his Honor, Judge Simonton, is set out
in the "Case," from which it appears that the action above
referred to was brought by C. M. Edenfield and others
against the Union Mortgage Company and others, amongst
whom was the present defendant. F. H. Dickinson, who
answered in full; but on exceptions to his answer being sus-
tained, it was withdrawn, and said Dickinson then demurred
to the bill upon the ground that no cause of action, as
against him, was staed. Thereupon, by consent of all par-
ties, the bill was discontinued as to Dickinson, and he
ceased, from that date, to be a party to the action. Subse-
quently, a decree of foreclosure and sale was made, at which
Mrs. M. A. Moody became the purchaser of the land in
dispute, and a conveyance in fee was made to her by the
special master. It seems that Mrs. Moody, after receiving
her title, demanded possession from defendant, F. H. Dick-
inson, who refused to comply with her demand. She there-
upon applied to the United States Court for a rule to show
cause why said Dickinson should not be attached for a con-
tempt in refusing to surrender the possession of said land,
and upon hearing the return to the rule to show cause, Judge
Simonton granted the orders above referred to, discharging
the rule solely on the ground that Dickinson was not a party
to the case in the United States Court when the decree of

foreclosure and sale was made, without undertaking to adjudicate the legal rights of the parties. From the foregoing statement it seems to us very clear that there was no error in sustaining the demurrer to the second defense set up in the answer. None of the allegations therein contained impair the title of Mrs. Moody, which she acquired by purchase at a judicial sale, under a decree made in a cause to which the defendant was originally a party, and from which, by his own act, he withdrew, and he cannot now impeach the title of the purchaser at such sale. It may be possible (though as to that we decide nothing, as the question is not before us), that the defendant, if he had not voluntarily withdrawn from that case, might have made the questions in that case which he is now seeking to raise. Or it may be that he still has a good ground of complaint against the said H. J. Moody for his acts and omissions under the covenant above referred to. But even conceding (though not deciding) that such is the case, we are unable to see how that could affect the title of Mrs. Moody, or her heirs at law, who stand in her shoes. All that we mean to say with reference to this particular matter is, that nothing which we have said is to be regarded as precluding the defendant from taking such action against H. J. Moody as he may be advised.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.